# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 8, 2023

Lyle W. Cayce
Clerk

No. 22-40230

Robert Gross,

*Plaintiff—Appellant*,

*versus*

United States of America,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:20-CV-192

Before Wiener, Stewart, and Engelhardt, *Circuit Judges*.
Per Curiam:*

Robert Gross appeals the district court's dismissal of his claim for a tax refund under Internal Revenue Code ("I.R.C.") § 1341. Because he fails to demonstrate that the district court erred in holding that he is not entitled to a refund under another provision of the tax code, we AFFIRM.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-40230

## I.  BACKGROUND

Gross was a psychiatrist in Texas between 2007 and 2014. In October 2014, he was indicted on fifty-two counts of health care fraud for submitting false claims for reimbursement to Medicare and Medicaid in violation of 18 U.S.C. § 1347. His indictment alleged that he sought reimbursement for procedures he never performed and services rendered after patients had died. In 2015, Gross entered into a plea agreement with the Government in which he admitted to knowingly submitting a fraudulent Medicare claim for services provided to a then-deceased patient.

Gross's plea agreement included the following stipulations: (1) that restitution could be included as part of his sentence and would account for all of his actions, not simply the one count he was convicted of; (2) he would pay restitution totaling $1,832,869.21—representing the amount of overpayments he received—to the Government for the victims of his fraud; (3) he would sign any documents necessary to facilitate his restitution payments; (4) the approximately $2 million that the Government seized from his various bank accounts would be applied toward any restitution he was ordered to pay; and (5) he would not contest the forfeiture of any funds to the United States. Ultimately, the district court sentenced Gross to 71 months in prison and ordered him to pay criminal monetary payments, including $1.8 million in restitution.[1]

Gross later filed his 2016 tax return and sought a refund of $838,077.40 under § 1341. He based this amount on the $2.1 million he repaid to Medicare and other private insurance companies as part of his plea

---

[1] Gross was also ordered to pay a fine of $100,000 and to forfeit any interest accrued in the funds that the Government seized.

agreement. The IRS, however, did not consider the merits of his refund request, so Gross filed suit.

In his suit, Gross claimed that he was entitled to a tax refund under § 1341 because he paid taxes on income "which he reasonably thought he had an unrestricted right" to, and he was later required to pay the Government in accordance with his guilty plea agreement, "even though he was not guilty." The Government moved to dismiss his complaint, first arguing that Gross did not and could not allege facts that would entitle him to relief under § 1341. It also asserted that he failed to allege that there was a separate basis for the deduction he claimed, which was required for relief under § 1341. In response to the Government's latter contention, Gross averred that he had sufficiently alleged that he qualified for a deduction under I.R.C. § 162(a).

The district court agreed with the Government and dismissed Gross's case. It reasoned that: (1) Gross could not have believed that he had an unrestricted right to funds that he illegally obtained in a health care fraud scheme; and (2) restitution does not qualify for deduction of "ordinary and necessary expenses" under § 162(a) when paid pursuant to a criminal guilty plea. Gross timely appealed.

## II.   STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). We accept a plaintiff's "well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Allen v. Walmart Stores, LLC*, 907 F.3d 170, 177 (5th Cir. 2018).

Whether a taxpayer is entitled to relief under § 1341 is a question of statutory interpretation that we review *de novo. See Carder v. Cont'l Airlines,*

*Inc.*, 636 F.3d 172, 174 (5th Cir. 2011) (explaining that questions of statutory interpretation are subject to *de novo* review).

### III.  Discussion

Gross argues that he was entitled to a refund on his 2016 tax return because: (1) he subjectively believed that he had an "unrestricted right" to the income he earned in 2007-2014; and (2) his restitution payment was eligible for deduction under § 162(a). We disagree and deny him relief.

Section 1341 "allows an income tax deduction to a taxpayer who previously received taxable income under a claim of right, but who must later repay some or all of that income." *Estate of Smith v. Comm'r*, 198 F.3d 515, 526 (5th Cir. 1999) (emphasis omitted). While § 1341 has numerous requirements, only two are pertinent to the instant appeal. First, under § 1341(a)(1), an item must be "included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item[.]" Second, as we explained in *Wood v. United States*, § 1341 "only applies where the taxpayer is entitled to a deduction under another provision of the tax code." 863 F.2d 417, 420 (5th Cir. 1989) (citing *United States v. Skelley Oil Co.*, 394 U.S. 678, 683 (1969)). Regarding § 1341(a)(1)'s "unrestricted right" prong, we have expressly recognized that when the item at issue is "embezzled funds[,] it is clear that it could not appear to the taxpayer that he had any right to the funds, much less an unrestricted right to them." *McKinney v. United States*, 574 F.2d 1240, 1243 (5th Cir. 1978) (internal quotations omitted).

Preliminarily, we examine our decision in *McKinney*. *See* 574 F.2d at 1240. There, a taxpayer sought a refund after reporting and paying taxes on funds he obtained by embezzling money from his employer, the Texas Employment Commission. *Id.* at 1241. He relied on § 1341 as the basis for his entitlement to a refund for the taxes he paid. *Id.* A panel of this court reasoned

that because § 1341 was enacted before embezzled funds could be legally counted as reportable income, Congress could not have intended to "give the benefits of [§ 1341] to holders of embezzled funds." *Id.* at 1243. We have upheld that logic in subsequent cases. *See, e.g.*, *Wood*, 863 F.2d at 420 (explaining that the "unrestricted right" prong cannot be satisfied where funds were fraudulently obtained). Under this backdrop, we proceed to Gross's claims.

Gross contends that the district court's reliance on *McKinney* is misplaced because this case does not involve embezzled funds, and he paid taxes on the income he earned. He also argues that his subjective belief that he had an unrestricted right to the income he earned through 2007 and 2014 satisfies § 1341's first prong. To evince his subjective belief, he highlights that from 2007 through 2014, he: (1) maintained an active Medicare license; (2) treated and billed patients; and (3) reasonably believed that he was entitled to the funds he received.

Our case law does not foreclose Gross's argument that we should look to his subjective belief that he had an unrestricted right to the funds he made from 2007 to 2014. In *Wood*, this court expressed its "reluctan[ce] to hold that a wholly subjective test of a claim of right to ill-gotten gains governs § 1341(a)(1)." 863 F.2d at 420. Instead, the panel recognized that even if the plaintiff "prevailed on his theory that *McKinney* is distinguishable or must be overruled, he must then furnish another statutory source for a deduction" in accordance with § 1341's second prong. *Id.* Ultimately, the panel concluded that the plaintiff failed to provide another statutory source, as the second prong required. So, rather than address whether *McKinney* remained good law or if prong one warranted a subjective inquiry, the panel decided the case on § 1341's second prong. Like in *Wood*, Gross fails § 1341's second prong, so we need not weigh his arguments on the first prong.

Section 162(a) permits a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." *See id.* (1975). In turn, C.F.R. § 1.162-21(b)(1)(i) provides that a "fine or similar penalty" includes amounts "[p]aid pursuant to . . . a plea of guilty . . . for a crime (felony or misdemeanor) in a criminal proceeding[.]" According to Gross, the Government conceded that his business expenses between 2007 and 2014 were ordinary and necessary to his practice, so he is entitled to a deduction under § 162(a). In response, the Government points to § 162(f), which prohibits deductions "for any fine or similar penalty paid to a government for the violation of any law." *See id.* (2012). It asserts that because Gross has not pleaded an alternate deduction to which he would be entitled, his claim fails. We agree.

Here, Gross is not entitled to a tax refund because § 162(f) disqualifies him from a deduction under § 162(a). The district court ordered Gross to forfeit his property and use it for restitution payments. *See* 18 U.S.C. § 982(a)(7) (providing that a district court, "in imposing sentence on a person convicted of a Federal health care offense, shall order the person to forfeit property, . . . that constitutes or is derived . . . from gross proceeds traceable to the commission of the offense"). Its order stemmed from his guilty plea, where he expressly agreed to pay restitution for his fraudulent behavior. His restitution order squarely falls within the legal definition of a "fine or similar penalty." *See* C.F.R. § 1.162-21(b)(1)(i). Consequently, § 162(f) disqualifies him from a deduction under § 162(a). Because Gross is not "entitled to a deduction under another provision of the tax code," he fails § 1341's second prong and has not stated a plausible claim for his requested tax refund. *Wood*, 863 F.2d at 420; *Iqbal*, 556 U.S. at 678.

No. 22-40230

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's dismissal of Gross's claim for a tax refund.