# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 5, 2022

Lyle W. Cayce
Clerk

No. 21-40512

_____

Joanna Guijarro, *Individually and next friend of J.C.G.*; Monique Guijarro, *Individually*,

*Plaintiffs—Appellants*,

*versus*

Enterprise Holdings, Incorporated, *doing business as Enterprise Rent-A-Car*; EAN Holdings, L.L.C., *doing business as Enterprise Rent-A-Car*; George Macias, *Individually, and as Employee and Agent of Enterprise Rent-A-Car*; Isis Trevino; Lithia Dodge of Corpus Christi, L.P.; Lithia of Corpus Christi, L.P.; Lithia Chrysler Dodge Jeep Ram of Corpus Christi,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:19-CV-217

_____

Before Richman, *Chief Judge*, and Costa and Ho, *Circuit Judges*.

Gregg Costa, *Circuit Judge*:

This car-accident case raises numerous issues about the appropriate forum and parties. Because the district court correctly ruled on those procedural questions and also got the merits right, we affirm.

I

Joanna Guijarro lives in Texas with her two children. In 2018, Joanna rented a Jeep SUV from her local Enterprise Rent-A-Car in Brownsville for a road trip. That Enterprise location is owned and operated by EAN Holdings. EAN is a Delaware limited liability company, whose sole member is a Missouri corporation called Enterprise Holdings.

The next day, the Guijarros were driving on Highway 59 in heavy rain, when Joanna decided to stop for gas. There was a sharp curve where the highway exit met the local road. As Joanna approached the curve, she lost control of the Jeep. The vehicle tumbled into a ditch, slammed into a concrete culvert, and came to rest facing down with the rear end in the air. All three family members were injured.

The Guijarros believed that a defect in the Jeep's braking system caused the accident. They sued Enterprise Holdings and EAN Holdings in Texas state court, alleging negligence, breach of contract, and violations of the Deceptive Trade Practices Act (DTPA). The Guijarros claimed that the defendants knew or should have known that the Jeep's brakes "were in a defective and/or unsafe condition" and failed to disclose or correct the problem.

The defendants removed the suit to federal court. The Guijarros twice tried to move the case back to state court. They first argued that the amount in controversy was insufficient. The court denied that motion, finding it apparent from the complaint that the amount in controversy exceeded $75,000. The Guijarros next asserted that their amended complaint defeated complete diversity because it added two Texas defendants—Lithia of Corpus Christi, Inc. (the Enterprise affiliate that serviced the Jeep) and Isis Trevino (the Enterprise agent who rented Joanna the Jeep). The court denied the second motion to remand and struck the

amended complaint, concluding the Guijarros only sought to join these parties to escape federal court.

The district court next dismissed the claims against Enterprise Holdings. Because of a filing earlier in the case in which the Guijarros had agreed to dismiss that entity if the defendants agreed EAN Holdings was the proper defendant, the court held that the Guijarros were judicially estopped from suing Enterprise Holdings.

With only EAN Holdings left in the case, the court granted summary judgment on the ground that the Guijarros had failed to set forth competent evidence that the Jeep's brakes were defective. In the court's view, Texas law required the Guijarros to introduce expert opinions that identified a "specific defect" in the vehicle and "ruled out other possible causes" for the crash. *See Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004). The Guijarros' evidence did not satisfy the expert requirement, as their only proof of a defect was Joanna's lay testimony "that she applied the brakes" and the car "would not stop."[1]

## II

### A

We begin with the Guijarros' first motion to remand. The denial of a motion to remand receives de novo review. *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 170 (5th Cir. 2009).

Federal courts have diversity jurisdiction over civil actions in which the amount in controversy exceeds $ 75,000 and the parties are citizens of

---

[1] Meanwhile, the defendants had introduced countervailing reports by two automotive experts. One had inspected the vehicle and found the brakes in good working order; the other had reviewed data from the vehicle's event recorder and opined that the brakes functioned as expected in the moments before the crash.

different states. 28 U.S.C. § 1332. There is no dispute that the relevant parties[2] in the state-court petition are diverse—the Guijarros are domiciled in Texas, while the two Enterprise entities are citizens of Missouri. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (holding that the citizenship of a limited liability company is determined by the citizenship of its members). The only question is whether the suit involves the requisite amount in controversy. Because the Guijarros did not plead a sum certain for damages in state court, they argue there was no basis for the district court to find that their case was worth more than $ 75,000.

There is a framework for resolving disputes over the amount in controversy. If the plaintiff's state court petition specifies a dollar amount of damages, that amount controls if made in good faith. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). If the petition is silent (as is often the case in state courts in our jurisdiction), the defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). The defendant can meet that burden in one of two ways: (1) by establishing that it is "facially apparent" that the claims are likely to exceed $75,000, or (2) by

---

[2] The petition named one other defendant: George Macias, a citizen of Texas who managed the Enterprise branch. But the Guijarros never served Macias. The district court erroneously thought that meant he was not part of the citizenship analysis. A defendant's "non-diverse citizenship cannot be ignored" just because he was never served. *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 883 (5th Cir. 1998). Diversity is not complete unless the defendant is "dropped formally, as a matter of record." 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3723 (4th ed. 2022).

We nonetheless agree that Macias's citizenship should not count for a different reason: The Guijarros could not conceivably have recovered against Macias, so he was improperly joined. *See Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). Macias could not be liable for the Guijarros' injuries for the same reasons another Enterprise employee, Trevino, could not. *See infra* Section II.B.

setting forth the facts in controversy that support a finding of the requisite amount. *Id.*

It is facially apparent from the Guijarros' original petition that their claims were likely to exceed $75,000. The Guijarros sought recovery for injuries sustained during a serious highway accident, in which their rental case "struck a concrete culvert" and "came to rest facing down with the rear end in the air." Their alleged damages included: (1) medical expenses, (2) physical disfigurement, (3) physical pain and mental anguish, (4) loss of earning capacity, (5) punitive damages, (6) treble damages under the DTPA, and (7) attorney's fees. Common sense dictates that such damages would exceed $75,000 for at least one plaintiff, which is all that is needed as the federal court would then have supplemental jurisdiction over the claims of the others. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005). Hospital bills for this kind of crash would likely start in the tens of thousands. Factoring in the other injuries alleged, multiplying for treble damages, and tacking on attorney's fees, the Guijarros' damages would easily exceed $75,000.[3] *See Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000); *Luckett*, 171 F.3d at 298 (both finding jurisdiction proper because the injuries alleged were similarly numerous and severe). The court thus properly denied the Guijarros' first motion to remand.

---

[3] The defendants set forth evidence in support of removal that confirms our finding. They produced a copy of the Guijarros' presuit DTPA notice letter to Enterprise Holdings, which specifies that the Guijarros aim to recover "[m]edical bills of over $100,000 for Joanna Guijarro, over $200,000 for Monique Guijarro, and over $50,000 for Juan Carlos Guijarro."

B

The next question is whether the district court erred by denying the Guijarros' second motion to remand. The Guijarros argued that their amended complaint adding two Texas citizens, Lithia and Trevino, destroyed diversity. When a plaintiff seeks to add such defendants after removal, the court must either "deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e).

The Guijarros maintain the district court had no choice but to remand the case because it had already permitted joinder by granting their motion for leave to amend the complaint. The court did not see the grant of that routine motion as permission to join a nondiverse party.[4] But even if the order granting leave had the unintended effect of joining Lithia and Trevino, it would not mean the court's hands were tied. A court may repair diversity by vacating a prior order joining nondiverse parties. *See Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171–72 (5th Cir. 2009). If the order at issue led to any lapse in diversity, the district court confirmed it would have done just that.

The Guijarros argue alternatively that the court *should* have permitted them to join Lithia and Trevino. We review that decision only for abuse of discretion. *Moore v. Manns*, 732 F.3d 454, 456 (5th Cir. 2013). The district court "should freely give leave" to amend the pleadings "when justice so requires." Fed R. Civ. P. 15(a)(2). But leave "is not automatic." *Moore*, 732 F.3d at 456. And a "higher level of scrutiny" applies to an amended pleading naming a new nondiverse defendant in a removed case. *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 185 (5th Cir. 2018). In that situation,

---

[4] As the court later explained, the Guijarros had not clarified *who* they sought to join or the impact of such joinder on the court's jurisdiction. The court thus treated the filing of the amended complaint and related motion to remand as an initial request to join the nondiverse defendants. It denied that request.

the court should consider several factors, including "the extent to which the purpose of the amendment is to defeat federal jurisdiction."[5] *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). The plaintiff's failure to state a plausible claim against a proposed defendant is evidence of the amendment's improper purpose and sufficient reason to deny leave to amend. *See Allen*, 907 F.3d at 186; *Moore*, 732 F.3d at 457.

The district court did not abuse its discretion in rejecting the Guijarros' amended complaint. After lengthy analysis, the court concluded there was no possibility the Guijarros could recover against either Lithia or Trevino. We agree with that conclusion. The Guijarros aimed to hold both parties liable for negligence—Trevino, as the customer agent responsible for the rental transaction, and Lithia, as the servicer that last inspected the vehicle. The negligence claim against Trevino could not succeed because it related solely to her acts and omissions as an Enterprise employee. Under Texas law, an employee must "owe[] an independent duty of reasonable care to the injured party apart from the employer's duty." *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996). Any duty Trevino had to protect the Guijarros from a defect in an Enterprise vehicle flowed from being the company's agent.

As for Lithia, courts applying Texas law generally agree that auto repair shops are under no duty to discover and warn about latent defects or recalls. *See Torres v. FCA US LLC*, 2020 WL 1809835, at *2 (S.D. Tex. Apr. 9, 2020) (citing cases); *see also Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000) ("Texas law generally imposes no duty to take action to prevent harm to others . . . ."). There is an exception if the servicer

---

[5] The court should also consider "whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Hensgens*, 833 F.3d at 1182.

negligently performed repairs that "it knew or should have known were necessary for the plaintiffs' protection," and the plaintiff "relied upon" the servicer's performance. *See Torrington*, 46 S.W.3d at 838. It does not apply here, however, as the Guijarros failed to allege that they were even aware of Lithia's services before the accident, much less that they relied on them.

The district court did not abuse its discretion in denying the second motion to remand.

## C

Nor did the district court err in dismissing Enterprise Holdings. The Guijarros identify no reason why two Enterprise defendants are better than one. In any event, we see no abuse of discretion in the court's ruling that estoppel barred the Guijarros from reneging on the agreement to dismiss Enterprise Holdings after the defendants carried out their end of the deal (by stipulating EAN Holdings was the proper entity). And practically that dismissal does not matter if—as we are about to hold—the Guijarros do not have evidence to get to trial on whether the brakes were defective. Without evidence of a defective brake, it does not matter how many Enterprise entities the Guijarros sue.

## III

While the above issues occupy the bulk of the parties' attention, we finally arrive at the one that ultimately resolves their dispute: whether the Guijarros' claims should get to a jury.

The district court held there was insufficient evidence of a brake defect because the Guijarros did not submit expert opinions that identified a specific defect and ruled out other possible causes of the crash. The court relied on *Nissan Motor Co. v. Armstrong*, 145 S.W.3d at 137, for that requirement of Texas law. The Guijarros now argue that *Armstrong*, a

products-liability case involving unintended acceleration, does not apply to their allegations of brake failure or to different causes of action like the DTPA. We disagree.

In *Armstrong*, a driver sued a car manufacturer, claiming that a defect in her vehicle caused it to rapidly accelerate and strike a brick building and a telephone pole. 145 S.W.3d at 134–36. The plaintiff presented testimony from other drivers who experienced unintended acceleration in the same car model, as well as her own testimony that the car shot forward "[a]fter she 'barely touched' the accelerator." *Id.* at 134. Like Joanna, the plaintiff maintained that the car did not respond, although "she was pressing the brake pedal as hard as she could." *Id.* The Supreme Court of Texas held that this lay testimony was not competent evidence of a defect. *Id.* at 137–38. There are too "many potential causes" for a car to accelerate, the most frequent of which is human error ("inadvertently stepping on the wrong pedal"). *Id.* As such, the court explained, "we have consistently required competent expert testimony and objective proof that a defect caused the acceleration." *Id.*

*Armstrong* is not limited to acceleration cases. The opinion says so. *Id.* at 137 (explaining that the evidentiary requirements "are not peculiar to unintended acceleration cases"). And it relies on similar rulings in cases involving other kinds of defects. *Id.* In one, for example, it was not enough that the plaintiff's expert testified merely that he "suspected" an electrical issue was responsible for a vehicle fire. *Id.* (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600–01 (Tex. 2004)).

The state supreme court has reiterated these evidentiary standards since *Armstrong*. *See Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 878 (Tex. 2014) (confirming that, in defect-related cases, an expert must "exclude 'other plausible causes' presented by the evidence" (quoting

*Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 218 (Tex.2010))). And lower courts routinely apply them to cases involving all sorts of alleged product defects. *See e.g.*, *Velasquez v. EAN Holdings, LLC*, 2018 WL 5924037, at *9 (N.D. Tex. Nov. 13, 2018) (tire blowout); *Madere v. Enter. Holdings, Inc.*, 2016 WL 7235829, at *2 (W.D. Tex. Dec. 14, 2016) (wheel failure).

It makes sense that *Armstrong* extends to claims predicated on brake defects. As with unintended acceleration, any number of common factors might prevent a vehicle from slowing down once the brake pedal is depressed. *See Armstrong*, 145 S.W.3d at 137; *cf. Velasquez*, 2018 WL 5924037, at *9 (explaining that determining the actual cause of a tire blowout involves equipment and skills unfamiliar to the layperson). In this instance, the rain might have mixed with oil stains on the asphalt, making the car's tires particularly slick. Or, as the defendants contend, perhaps Joanna was driving too fast, and the car hydroplaned on the wet road.

The Guijarros counter that Joanna did not need to be an expert to perceive that her brakes were not working. But whether the brakes performed as expected is not the issue. Indeed, it was just as apparent to the driver in *Armstrong* that her vehicle was accelerating on its own. *See* 145 S.W.3d at 134. The issue is whether a defect *caused* the performance problem. *Id.* at 137–38; *see also Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 807 (Tex. 2006) ("Texas law does not generally recognize a product failure standing alone as proof of a product defect."). The Supreme Court of Texas requires that experts speak to that more technical question. As a federal court sitting in diversity, our job is not to weigh in on the wisdom of the state rule but to faithfully apply it. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

The Guijarros also contend that *Armstrong* is distinguishable because it addressed a strict products-liability claim, whereas they allege negligent misrepresentation, breach of contract, and violations of the DTPA. True, *Armstrong* did not discuss these other claims. But we see no basis for cabining the expert requirement for proving mechanical defects to the products-liability arena. All of the Guijarros' claims rely on the same factual predicate: They cannot prove that EAN failed to maintain the Jeep or misrepresented the state of its brakes without first showing that the brakes were defective. *Armstrong* is about what it takes to allow a jury to find that a defect existed. As long as a claim depends on showing this type of mechanical defect, we see no logical reason for not applying the expert requirement across the board.

Indeed, Texas intermediate courts uniformly hold that claims premised on such defects must comport with *Armstrong*'s evidentiary standards, regardless of whether those claims are rooted in tort law, contract law, or the DTPA. *See e.g.*, *Hill v. Sonic Momentum JVP, LP*, 2021 WL 3501540, at *4 (Tex. App.—Houston [1st Dist.] 2021) (breach of contract, breach of warranty, and the DTPA); *GB Tubulars, Inc. v. Union Gas Operating Co.*, 527 S.W.3d 563, 571–72 (Tex. App.—Houston [14th Dist.] 2017) (same, as well as negligent misrepresentation). More broadly, Texas law has long required expert testimony for issues of causation that go beyond "general experience and common sense." *See Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 706, 708 (Tex. 1970).

We do not think this question is close enough to warrant certification to the Supreme Court of Texas. *See McMillan v. Amazon.com*, 983 F.3d 194, 202 (5th Cir. 2020) (noting that certification is usually reserved for close questions of state law with "scant on-point precedent"). Certification is appropriate when "consequential state-law ground is to be plowed" and "any *Erie* guess would involve more divining than discerning." *Id.* Our guess today is a safer bet. The Guijarros have not identified a single case cabining

*Armstrong* to the realm of products liability. *See Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 504–05 (5th Cir. 2019) (declining to certify because multiple intermediate courts had adopted one view of the issue, and the plaintiff had not identified any contrary authority). Nor does such a distinction make sense. Add to the one-sidedness of this issue that neither party requested certification.

We conclude that Texas law requires plaintiffs alleging a brake defect to put forth "competent expert testimony and objective proof" that the defect caused their injuries. *See Armstrong*, 145 S.W.3d at 137. Because the Guijarros did not do so, the summary judgment against them was proper.

\* \* \*

The judgment is affirmed.